## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRYANT G. BLACK,** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **Civil No. RWT   05-330** |
| | * | |
| **QUEST DIAGNOSTICS INC.,** | * | |
| | * | |
| Defendant | * | |

## MEMORANDUM OPINION

On November 17, 2005, this Court entered a Memorandum Opinion [Paper No. 21] detailing the sad and frustrating history of the failures of discovery in this case.  On the same day, the Court entered an Order [Paper No. 22] directing Plaintiff to provide full and complete responses to Defendant's document requests within ten days, granting leave to Defendant Quest Diagnostics, Inc. ("Quest") to submit a detailed affidavit in support of an award of fees against Plaintiff's counsel, David D. Sutton, Esq., and scheduling a hearing for 10:00 a.m. on January 20, 2006, at which Mr. Sutton was required to attend and show cause why an award of fees and expenses should not be made against him in the amount set forth in the affidavit filed by the Defendant's counsel.[1] Unfortunately, the November 17 Opinion and Order failed to resolve the failures of discovery, and the troubled history of this case has continued.

---

[1]The Order also requested that Plaintiff appear for deposition, but unbeknownst to the Court this directive was moot, as Defendant had deposed Plaintiff on November 15, 2005.

<u>Facts</u>

On December 9, 2005, Defendant submitted a status report alleging that Plaintiff was in default of his obligations under the Court's November 17th Order. [Paper No. 24] Specifically, Quest indicated that despite the many assurances of Mr. Sutton, he had not yet responded to any document requests. On December 15, nearly one month after the Court's Order directing compliance with discovery within ten days, Quest received a letter from Mr. Sutton stating "Please find enclosed Supplemental Discovery and a Notice of Deposition." <u>See</u> Exhibit F of Defendant's Third Motion to Dismiss. According to a later filing by Quest, Mr. Sutton failed to provide responses to Quest's requests for production, and instead simply enclosed, without further explanation, select pages from a 2002 appointment calendar and incomplete tax returns. By letter that same day, Quest advised Mr. Sutton that he had failed to provide a written response to the original request for production (served on April 13, 2005), and that Quest had no way of knowing whether there had been compliance with its requests. This letter requested a "full and complete response" by December 23, 2005, and indicated that if Mr. Sutton failed to send such a response, "Quest would be forced to take further appropriate action, including but not limited to a request for sanctions, up to and including dismissal, and for the additional fees and costs incurred due to non-compliance."

Quest received no response from Mr. Sutton, and it subsequently filed on December 28 a Motion to Dismiss for Failure to Comply with the Court's November 17, 2005 Order ("Third Motion to Dismiss"). [Paper No. 25] The Motion sought dismissal due to Plaintiff's continued failure to comply with the Court's Order directing him to respond to discovery, specifically, Defendant's requests for production. Quest further asked that the Court hold Plaintiff in contempt for his failure to obey this Order and requested reasonable expenses, including attorney's fees incurred due to the lack of compliance with the November Order.

On January 5, 2006, the Court issued an Order [Paper No. 26] scheduling a hearing on the Third Motion to Dismiss on January 20, 2006, to be held together with the previously scheduled Show Cause hearing.  This Order directed Plaintiff's counsel to file an opposition to the motion to dismiss by noon on January 13, and ordered Plaintiff Bryant Black to appear with his counsel at the hearing so that the Court could allocate responsibility for the continued failures of discovery in this case.  At 11:59 a.m. on January 13, Mr. Sutton filed Plaintiff's response to the Third Motion to Dismiss. [Paper No. 31]   This very brief Response, containing so many typographical errors as to render parts of it nearly incomprehensible, asserted that Plaintiff had made all reasonable efforts to comply with Defendant's discovery requests, and "in fact [Defendant] now has all documents and answers from Plaintiff."[2]

Based on this history, it should have been readily apparent that the hearing scheduled for January 20, 2006, was a very important one for this case, the Plaintiff and his counsel.  In fact, one day before the scheduled hearing, the undersigned's judicial assistant received a call from Mr. Sutton's secretary noting that the hearing was scheduled, and inquiring where Mr. Sutton should appear.  The judicial assistant advised Mr. Sutton's secretary that the hearing would be conducted as scheduled at 10:00 a.m. in Courtroom 2A of the United States District Court for the District of

_____

[2]Paragraph one actually provided "in fact **plaintiff** now has all answers and documents **from Plaintiff**," (emphasis added) which the Court reads to mean that Plaintiff believed that he had provided the Defendant with all requested answers and documents.  The response also provided "that pursuant to this Honorable Court's order, Plaintiff did appear for a deposition debtor [sic] before twentyone [sic] days as Ordered bi [sic] ther [sic] Honoraable [sic] Court," and that "pursuant to this Honorable Court's Order, Plaintiff did produce documents well be fore [sic] the Court's Order."  The Response concluded with the request that "this Honorable Court deny Defendant's Motion to Dismiss, deny sanctinos [sic] and allow Plaintiff's counsel to pay counsel fees."

Maryland in Greenbelt.

One might surmise that the two Orders of this Court and direct communication through the undersigned's judicial assistant would result in this Court commencing the January 20th hearing in a timely and orderly fashion. This was not to come to pass. At 10:00 a.m., the Court commenced the show cause and motions hearing as scheduled. Present before the Court at that time were the Plaintiff and two attorneys serving as counsel for Quest—one from Washington, D.C. and one who had traveled from New Jersey to attend the proceedings. Noting Mr. Sutton's absence, the Court took a 15 minute recess at 10:15 a.m., assuming that his delay in appearing might be attributable to a traffic accident or some other calamity. At 10:25 a.m., Mr. Sutton's secretary called the undersigned's chambers to communicate that Mr. Sutton wished to postpone the hearing until 11:00 a.m. Mr. Sutton's secretary was advised that the hearing had already commenced, that it was not possible to postpone the hearing, and that Mr. Sutton should appear promptly.

Based on this phone call, the Court expected that Mr. Sutton would arrive promptly, but surely no later than 11:00 a.m. Accordingly, the Court extended the fifteen minute recess that began at 10:15 a.m., and anticipated that the hearing could resume by 11:00 a.m. This, too, did not come to pass. The eleven o'clock hour came and went without the appearance of Mr. Sutton, and the courtroom staff and those in attendance at the hearing continued to wait patiently for his promised arrival. Finally, at 11:45 a.m. Mr Sutton did not appear, but rather contacted the Court via telephone and asked to speak with the undersigned. This call was transferred to a speakerphone in the courtroom so that Mr. Sutton's call would be on the record with opposing counsel present and memorialized in the court reporter's transcript.

To explain his extreme tardiness, Mr. Sutton indicated that he was unable to attend the hearing as directed because he was tending to two matters filed against him by the

Maryland Attorney Grievance Commission ("AGC") in the Circuit Court for Baltimore City. Mr. Sutton indicated that these matters had extended further than he expected, and that he elected to appear before Judge Lynn K. Stewart in the Circuit Court for Baltimore City on the AGC matters in light of the importance of "defending [his] license against the grievance commission." Tr. at 21. Mr. Sutton indicated that he first became aware of the carryover of the AGC matters on January 19, 2006, the day before the scheduled hearing before this Court, and offered no explanation as to why he did not advise the Court that he would not be in attendance. Mr. Sutton explicitly indicated that "[he] made numerous attempts to postpone the [AGC], but the court would not allow [him] to have that type of postponement," Tr. at 21, stressing that he was "under court order to appear there," Tr. at 19, and "they're having motions on the second case today." Tr. at 15.

After the conclusion of the January 20th hearing, the Court communicated with Judge Stewart and counsel for the Maryland Attorney Grievance Commission. Based on these conversations, it appears to the Court that Mr. Sutton did not provide a truthful explanation for his absence, as the AGC matters in the Circuit Court for Baltimore City concluded on January 18th, with no proceedings taking place on January 20th that would conflict with Mr. Sutton's scheduled appearance before this Court. The Court subsequently entered an Order dated January 20, 2006 [Paper No. 32], directing Mr. Sutton to appear at a further hearing on January 25, 2006 at 10:00 a.m., truthfully explain the reasons for his absence at the January 20th hearing, and show cause why the Court should not enter additional sanctions against him.[3]

---

[3]This Order was entered on the Court's electronic docket, with copies being faxed and sent via United States Postal Service to Mr. Sutton. The law clerk of the undersigned also contacted Mr. Sutton via telephone on January 24, 2006, to confirm that he was aware that his presence was ordered before this Court on January 25th.

<u>Discussion</u>

•     Contumacious Behavior and Violations of the Rules of Professional Conduct

It is inconceivable to this Court how any individual, much less a  practicing member of the bar of this Court, could disregard not one, but two Orders signed by a federal judge that commanded his presence before the Court at a particular time.  Yet Mr. Sutton did exactly that, and more. Mr. Sutton's statements on the record on January 20th indicate that he allegedly first became aware on January 19th that he would be unable to attend the hearing.  He failed to advise the Court of this alleged conflict, however, and instead opted to cause a substantial disruption in the operations of this Court on January 20th by requiring a federal judge, a judicial clerk, a courtroom deputy, a court reporter, his client, and defense counsel to wait for almost two hours.  Lawyers have a duty both to the courts and to their clients to attend court sessions punctually.   <u>United States v. Anonymous</u>, 215 F. Supp. 111, 113 (E.D. Tenn. 1963).  The failure to do so should not be tolerated, and without an acceptable excuse, is punishable by criminal contempt.  <u>See</u> <u>United States v. Marx</u>, 553 F.2d 874, 876 (4th Cir. 1977) ("a lawyer's willful absence from his client's trial without a legitimate reason is contemptuous."); <u>In re Niblack</u>, 476 F.2d 930, 933 (D.C. Cir. 1973) ("[W]hen a lawyer, in wilful disregard of a court's order, appears almost two hours after the appointed hour he subjects himself to discipline" pursuant to Federal Rule of Criminal Procedure 42); <u>United States v. Burstyn</u>, 878 F.2d 1322 (11th Cir. 1989) (affirming contempt conviction for appearing late for a trial).

Furthermore, Mr. Sutton was far less than candid in the explanation given to the Court of the reason for his absence at the January 20th hearing.  As discussed above, Mr. Sutton stated on the record that he was unable to personally appear in a timely fashion because he was then present as a defendant in an Attorney Grievance Commission ["AGC"] matter before Judge Lynn K. Stewart

in the Circuit Court for Baltimore City which began on Tuesday, January 17, 2006.[4]   He stated that

the matter had been scheduled for two days, but had carried over to January 20, and that he was still

in the hearing before Judge Stewart.[5]   Mr. Sutton stressed that "[he was] under court order to

appear" before the Circuit Court for Baltimore City on the AGC matter, Tr. at 19, and represented

that he had "made numerous attempts to postpone the [AGC], but the court would not allow [him]

to have that type of postponement for the hearing." Tr. at 21.

Based on communications with Judge Stewart and counsel for the Maryland Attorney

Grievance Commission, Mr. Sutton's stated explanations for his absence appear, at best, to be gross

misrepresentations.   The Court has been advised that the hearing in the AGC matter in the

Circuit Court for Baltimore City concluded on January 18th, and no further proceedings took place

on January 20th that would conflict with Mr. Sutton's scheduled appearance before this Court.   At

the further hearing before this Court on January 25, 2006, Mr. Sutton indicated that he was in fact

in the Circuit Court for Baltimore City on January 20th tending to a default in a second AGC matter

against him, and suggested that he "misinterpreted the clerk's office" and "was under the

impression" that he was scheduled to be in a hearing that day when he advised this Court of the

reasons for his failure to appear on January 20th.   Mr. Sutton, however, directly stated several false

facts: that the hearing had carried over to January 20th, that he was in fact present at a hearing on that

---

[4]See Tr. at 14, ll. 9-14 ("I've been in an Attorney Grievance Committee case this week, and it's been scheduled to go through today and it is the second case - I was made aware of yesterday - in which there is a default against me now that I was trying to respond to today."). See also Tr. at 15, l. 18-20; Tr. at 21, l. 2-11.

[5]See Tr. at 14, l. 23 - 15, l. 3 ("It was scheduled to start this Tuesday, which it did, in front of Judge Stewart, and the case has extended further than I thought it would be.  I thought it would be done by yesterday; however, there are two cases against me and they're having motions on the second case today.").

day, that he had attempted to postpone this (non-existent) hearing, and, most seriously, that he was under "court order" to appear in the Circuit Court for Baltimore City on those matters.  Moreover, it appears that Mr. Sutton made additional false statements to this Court on January 25 when he stated that he had been "under the impression" that a hearing was scheduled for January 20th in the Circuit Court for Baltimore City.[6]  Judge Stewart has advised the law clerk to the undersigned that Mr. Sutton called her office on January 19th to inquire about the second AGC case and was specifically advised that no hearing would take place on January 20.

"[U]nabashed prevarication regarding his whereabouts" by an attorney is punishable as criminal contempt under 18 U.S.C. § 401, and allowing Mr. Sutton to "escape all sanctions after such misbehavior would . . . encourage chaos, reward reprehensible tactics, and breed contempt for court scheduled proceedings."  Ahmed v. Reiss Steamship Co., 580 F. Supp. 737, 746 (N.D. Ohio 1984).  The  Court will therefore, by separate Order to be entered at a later date, direct Mr. Sutton to appear before another member of the bench of this Court to show cause why he should not be found in criminal contempt pursuant to 18 U.S.C.§ 401 and Federal Rule of Criminal Procedure 42 for his conduct on January 20 and 25, 2006.[7]

---

[6]Mr. Sutton also represented to the Court on January 25th that "the court docket and records are sealed for AGC cases," Tr. at 6, apparently in an effort to explain his erroneous "impression" that a hearing was scheduled before Judge Stewart.  Not only was he advised by Judge Stewart's chambers that no hearing would take place on January 20, but also his representation that the court docket and records are sealed for AGC cases was factually incorrect and wrong as a matter of law.  Rule 16-273 of the Maryland Rules of Procedure expressly provides that "all proceedings" on a Petition for Disciplinary Action, and "all documents or other items admitted into evidence at any hearing on the petition" are "public and open to inspection."

[7]Any contempt sanction would be criminal, not civil.  The purpose of any sanction imposed on Mr. Sutton for his behavior on January 20th and 25th would be to vindicate the authority of this Court by punishing him and to deter future attorneys' similar misconduct.  See United States v. United Mine Workers, 330 U.S. 258, 302-04 (1947).

8

The actions of Mr. Sutton also appear to amount to significant violations of the Lawyer's Rules of Professional Conduct, including Rule 3.3 ("A lawyer shall not knowingly (1) make a false statement of material fact or law to a tribunal."), Rule 3.4(c) (A lawyer shall not "c) knowingly disobey an obligation under the rules of a tribunal."), Rule 3.5(a)(8) ("A lawyer shall not . . . engage in conduct intended to disrupt a tribunal.), and Rule 8.4(c) (A lawyer shall not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation.").  For these reasons, the Court will also forward pertinent documents, including this Memorandum Opinion, to the Disciplinary and Admissions Committee of this Court and to the Attorney Grievance Commission of Maryland for appropriate action.

- Sanctions for the Failure of Discovery

At the January 20th hearing, the Court provided Plaintiff and his counsel with the opportunity to explain both the earlier and the more recent failures of discovery in this case.  Plaintiff indicated that he had provided Mr. Sutton with copies of the records requested by Quest, and the Court does not doubt the veracity of Plaintiff's statements.  The explanation of Mr. Sutton as to why the Defendant has not received these requested documents, however, is utterly wanting.  Mr. Sutton is not functioning as a member of this bar—or for that matter, of *any* bar—should.   He has been grossly delinquent in the performance of his duties for his client, and his behavior has caused an enormous expenditure of time, legal fees, and costs by Defendants.

The Court has reviewed the affidavit submitted by Defendant on November 28, 2005 [Paper No. 23], as well as the supplemental statement submitted at the January 20th hearing detailing an additional $4,950 expended by Defendant in its fruitless pursuit of discovery.  The Court finds that the fees, charges, and expenses detailed in these affidavits are fair and reasonable.  More importantly, the Court finds that these costs are directly attributable to Mr. Sutton's failure to attend

9

to his responsibilities as Plaintiff's counsel.[8]  The Court will therefore, by separate order, enter an award of sanctions for amounts including the totals indicated in the affidavit and statement submitted by counsel for the Defendant.  Recognizing that the January 20th hearing would have consumed significantly less time of defense counsel had Mr. Sutton timely attended,  the Court will also award $550 for two additional hours of time expended by defense counsel due to Mr. Sutton's prolonged absence and failure to notify this Court that he would not be attending the January 20th hearing.

Conclusion

For the foregoing reasons, the Court will, by separate Order, award sanctions to the Defendant for the failures of discovery, such sanction to be paid by David D. Sutton, Esq., and not by Plaintiff.

January 27, 2006                         /s/
Date                                    ROGER W. TITUS
                                        UNITED STATES DISTRICT JUDGE

---

[8]The Court notes that Plaintiff's response to the Defendant's Third Motion to Dismiss indicates that "Plaintiff and Plaintiff's attorney are prepared to pay for the counsel's fees for Motion to Dismiss."  Notwithstanding this unambiguous declaration in a paper that he personally drafted and filed, at the January 20th hearing Mr. Sutton expressed great surprise at the $11,909 requested by Defendant for the initial discovery failures, and indicated that he thought the total was only $2,000. Mr. Sutton could not have been unaware of Defendant's request, however, as Defendant's November submission sets forth in an Affidavit and exhibit both its line item expenses as well as the total sum sought.  In any event, the Court finds these fees and expenses to be reasonable, and considers this award to be a proper sanction for Mr. Sutton's recalcitrance in responding to discovery requests.